IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SCOTCH ROAD TRUST, LLC, et al.  :        CIVIL ACTION
                                  :
       v.                         :
                                  :
GF PRINCETON, LLC              :        NO. 11-7743

MEMORANDUM

Bartle, J.                                June 21, 2012

       Plaintiffs Scotch Road Trust, LLC ("Scotch Road") and
Vantage Communications (USA), LLC ("Vantage")[1] bring this action
against GF Princeton, LLC ("GF Princeton").  Plaintiffs seek a
declaratory judgment and allege fraud in the inducement and
breach of contract.  Before the court is the motion of the
defendant to dismiss all counts of the complaint for lack of
personal jurisdiction under Rule 12(b)(2) of the Federal Rules of
Civil Procedure.  The court permitted discovery limited to this
issue.

I.

       When a defendant moves to dismiss a claim under Rule
12(b)(2), the plaintiffs bear the burden of showing that personal
jurisdiction exists.  See Marten v. Godwin, 499 F.3d 290, 295-96
(3d Cir. 2007).  At this stage the plaintiffs must establish only

---

1.  Vantage is the lease guarantor of Scotch Road.  It is not
clear which plaintiff brought each claim, but this is not
significant for the purposes of this motion.  We will therefore
refer to Scotch Road and Vantage collectively as "plaintiffs."

"a prima facie case of personal jurisdiction" and are entitled to have their allegations taken as true and all factual disputes drawn in their favor.  <u>Miller Yacht Sales, Inc. v. Smith</u>, 384 F.3d 93, 97 (3d Cir. 2004).  Nonetheless, the plaintiffs must allege "specific facts" rather than vague or conclusory assertions.  <u>Marten</u>, 499 F.3d at 298.

II.

The following facts are undisputed or are viewed in the light most favorable to the plaintiffs.  The defendant GF Princeton and the plaintiffs entered into a lease on or about February 20, 2009 for space in a commercial office building owned by GF Princeton in Mercer County, New Jersey.**2**  The lease had an initial term of five years, six months commencing on April 1, 2009.  The lease provided the plaintiffs with an option to terminate it "at any time following the first 30 months after the Commencement Date ('Early Termination Option') upon six months advance written notice advising Landlord of Tenant's decision to exercise the Early Termination Notice."

On April 7, 2011, the plaintiffs sent a letter to GF Princeton to put it "on notice of [their] intent to exercise the Early Termination Notice."  GF Princeton then sent a letter to the plaintiffs on December 13, 2011, stating that they could not exercise the Early Termination Option until 30 months had passed,

---

2.  The commercial office building owned by GF Princeton is subject to a ground lease between GF Princeton and a third party, Herring Land Group.

-2-

which had not yet occurred.  GF Princeton's letter stated that
the plaintiffs improperly terminated the lease and owed GF
Princeton $355,140.80 plus operating costs for the remaining six
months on the lease.  The plaintiffs filed this action on
December 20, 2011, seeking a declaratory judgment regarding the
exercise of the Early Termination Option and alleging fraud in
the inducement and breach of contract.  GF Princeton then filed a
motion to dismiss all counts of the complaint for lack of
personal jurisdiction under Rule 12(b)(2) of the Federal Rules of
Civil Procedure.

GF Princeton is a limited liability company formed
under the laws of the state of Delaware.  It has seven members.
None of these members is a citizen of Pennsylvania or maintains
its residence or principal place of business in Pennsylvania.  GF
Princeton is a single purpose entity that owns and manages the
commercial office building in Mercer County, New Jersey involved
in this suit.  It owns no other real property and conducts no
other business.  GF Princeton has never maintained an office in
Pennsylvania, employed personnel in Pennsylvania, opened or
maintained bank accounts in Pennsylvania, registered a telephone
number or mailing address in Pennsylvania, or owned or rented
property in the Commonwealth.

GF Princeton retained a real estate listing agent,
Mercer Oak Realty ("Mercer") on January 31, 2008.  GF Princeton
and Mercer signed an "Exclusive Listing Agreement" to set out the
terms of their relationship.  From that time through today,

-3-

Mercer has solicited tenants for GF Princeton's building. Pursuant to the listing agreement, Mercer created sales brochures and internet advertisements and mailed these brochures to at least sixty individuals and entities in Pennsylvania.  Some of these advertized GF Princeton's property as having an "[e]xcellent commute from Bucks County, PA" and with "SEPTA West Trenton Rail Station nearby."  In an email dated April 14, 2008, Mercer's Managing Director advised that the marketing materials should "[s]how Yardley and Newtown and Rt 332 for reference" and "[u]se the SEPTA logo for the train station."

The managing member of GF Princeton, Greyfields Investors, LLC ("Greyfields"), through emails sent by its Senior Managing Director and Principal, Robert Freeman ("Freeman"), instructed Mercer to design the brochures in certain ways, although there is no evidence in the record that he instructed the brochure to be designed specifically referencing the Pennsylvania language.  Freeman communicated with potential tenants, including with the plaintiffs, by email.  Mercer, for its part, sent periodic Marketing Status Reports to Greyfields. These Marketing Status Reports reveal that Mercer attempted to negotiate leasing agreements for GF Princeton's building with at least four Pennsylvania companies.

One of the sixty individuals to whom Mercer mailed brochures was Doug Newbert ("Newbert") of Radnor, Pennsylvania, the real estate agent of the plaintiffs.  Sab Russo ("Russo"), Mercer's Managing Director, also sent an email directly to

Newbert on April 28, 2008, attaching "the SEPTA West Trenton Line
schedule," and stating that "there is a full slate of trains from
dawn until midnight both ways."  Russo also noted that he
"thought this would be of interest to Vantage since they
mentioned that they employ many University of Pennsylvania
students."  Russo later emailed Newbert on July 2, 2008 to
suggest a "face to face" between Greyfields and the plaintiffs.
The email stated this meeting could be "at the building or at
Vantage's offices."  Later, on or about September 15, 2008,
Freeman and Russo traveled to plaintiffs' offices at 110 Terry
Drive, Newtown, Pennsylvania.  Freeman described this meeting in
his deposition as "an introductory, show-the-flag meeting."  He
further explained, "I think a lot of time was spent discussing
our difficulties with the land owner[3] and efforts to get that
resolved in order to both stabilize our position and make it
possible for Vantage or Pete Murphy to potentially acquire the
property if they chose to do so."

III.

A federal district court sitting in diversity may
assert personal jurisdiction over a nonresident of the state in
which the court sits only to the extent authorized by the law of
that state.  Fed. R. Civ. P. 4(k)(1)(A).  Pennsylvania law
provides for jurisdiction coextensive with that allowed by the
Due Process Clause of the Constitution.  42 Pa. Cons. Stat. Ann.

---

3.  Freeman is referring to Herring Land Group, the ground lease
landlord.

§ 5322(b).  Determinations of jurisdiction are generally claim specific.  See Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001).  Here, all the claims directly relate to the leasing agreement between the plaintiffs and the defendant and thus may be analyzed together.

Under the Due Process clause, we may exercise personal jurisdiction only over defendants who have "certain minimum contacts ... such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation omitted).  A parallel inquiry is whether the defendants' contacts with the forum state are such that the defendants "should reasonably anticipate being haled into court there."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

As a threshold issue, we must address whether Mercer's actions may be imputed to GF Princeton for the purposes of establishing personal jurisdiction.  The Pennsylvania long arm statute explicitly provides for jurisdiction over a person "who acts directly or by an agent."  See 42 Pa. Cons. Stat. Ann. § 5322.  "Activities of a party's agent may count toward the minimum contacts necessary to support jurisdiction."  Grand Entertainment Group v. Star Media Sales, 988 F.2d 476, 483 (3d Cir. 1993).

GF Princeton contends that Mercer was not acting as its agent but rather as its independent contractor when it made

-6-

contacts with Pennsylvania.  Indeed, paragraph 12 of the
Exclusive Listing Agreement between GF Princeton and Mercer
reads:

> Broker shall at all times act as an
> independent contractor hereunder, it being
> understood and agreed between the parties
> that no agency (other than as may be
> expressly provided herein), joint venture,
> partnership or other relationship is intended
> and no such arrangement shall be created
> between Owner and Broker with respect to the
> Property.  Broker shall have no authority to
> act as a principal or developer or to act on
> behalf of Owner with respect to the Property,
> except as expressly herein set forth.

However, paragraph 1 of the Exclusive Listing Agreement reads,
"Owner hereby engages Broker as Owner's sole and exclusive _agent_
to represent Owner to find tenants for the Property on terms and
conditions acceptable to Owner" (emphasis added).

Because paragraph 12 explicitly states, "other than as
may be expressly provided herein," we conclude that paragraph 1
creates an agency relationship between GF Princeton and Mercer as
to Mercer's activities in finding tenants for GF Princeton's
property.  Our conclusion is bolstered by GF Princeton's
supervision of Mercer's marketing activities.  This supervision
occurred when Mercer sent periodic Marketing Status Reports to
Greyfields and when Freeman emailed Mercer employees periodically
to advise them to make various changes to marketing materials.
Mercer was GF Princeton's agent, and therefore Mercer's
activities in finding tenants for GF Princeton's property may

count toward the minimum contacts necessary to support
jurisdiction over GF Princeton.

IV.

A federal district court may exercise personal
jurisdiction over a nonresident defendant based on either general
jurisdiction or specific jurisdiction.  "General jurisdiction
exists when a defendant has maintained systematic and continuous
contacts with the forum state." Marten, 499 F.3d at 296 (citing
Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408,
414-15 nn.8-9 (1984)).  There is specific jurisdiction when the
claim arises from or relates to conduct purposely directed at the
forum state.  Id. (citing Hall, 466 U.S. at 414-15 nn.8-9).

General jurisdiction exists when a corporation (1) is
incorporated in Pennsylvania or licensed as a foreign corporation
in Pennsylvania, (2) consents to jurisdiction in Pennsylvania, or
(3) carries on a "continuous and systematic part of its general
business" in Pennsylvania.  42 Pa. Cons. Stat. Ann. § 5301(a)(2).
GF Princeton is not incorporated or licensed as a foreign
corporation in Pennsylvania, and it has not consented to
jurisdiction here.  Accordingly, the plaintiffs may only
establish the existence of general jurisdiction over GF Princeton
by showing that a continuous and systematic part of its
businesses occurs in Pennsylvania.

The threshold required for a finding of general
personal jurisdiction is very high.  See Compagnie des Bauxites
de Guinea v. Ins. Co. of N.A., 651 F.2d 877, 890 & nn.1-2 (3d

-8-

Cir. 1981).  Factors to consider in determining whether the
defendant has maintained systematic and continuous contacts
include any personnel or facilities in the forum state and
whether the defendant advertised or solicited business here.  BP
Chems. Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 262 (3d
Cir. 2000).

The plaintiffs contend that GF Princeton maintains
systematic and continuous contacts with Pennsylvania because
Mercer mailed sixty Pennsylvania individuals marketing brochures
and attempted to negotiate leases with five companies in
Pennsylvania.  The plaintiffs based their argument on Garfield v.
Homowack Lodge, Inc., in which the Pennsylvania Supreme Court
held that a defendant who placed weekly advertising in a
Philadelphia newspaper over a five-year period at a cost of
$2,000 per year, had a toll free number to enable Philadelphia
residents to make reservations at its New York hotel, and paid a
10% referral fee to Philadelphia travel agents conducted
continuous and substantial business activity in Pennsylvania.
378 A.2d 351 (1977).  This case was decided in 1977, prior to
most major Supreme Court decisions on personal jurisdiction.  As
a result, the court did not differentiate between specific and
general personal jurisdiction.  Accordingly, it is not clear
whether it found that these contacts were systematic and
continuous, as required for general personal jurisdiction.  In
our view, GF Princeton's contacts with Pennsylvania do not rise
to the level of those in Garfield and in any event are not

-9-

sufficient to meet today's high threshold necessary for general personal jurisdiction.

                              V.

        To determine whether specific jurisdiction exists, courts generally engage in a three-part inquiry.  D'Jamoos v. Pilatus Aircraft Ltd., 566 F.3d 94, 102-03 (3d Cir. 2009).

            First, the defendant must have purposefully
            directed [its] activities at the forum.
            Second, the litigation must arise out of or
            relate to at least one of those activities.
            And third, if the first two requirements have
            been met, a court may consider whether the
            exercise of jurisdiction otherwise comports
            with fair play and substantial justice.

Id. (internal quotations and citations omitted).

        Here, the plaintiffs contend that specific personal jurisdiction exists over GF Princeton because Freeman and Mercer met with the plaintiffs at their headquarters in Newtown, Pennsylvania regarding the potential leasing agreement, because the plaintiffs would not have entered the leasing agreement but for the fact that Mercer initially sent its real estate agent a brochure and because the plaintiffs and GF Princeton communicated periodically by email and telephone regarding the leasing agreement.

        We must first determine whether these contacts demonstrate that GF Princeton purposefully directed its activities at Pennsylvania.  D'Jamoos, 566 F.3d at 102-03.  In O'Connor v. Sandy Lane Hotel Co., a citizen of Pennsylvania sued a Barbados hotel in the Eastern District of Pennsylvania for

                              -10-

injuries suffered while receiving a massage treatment at the
hotel.  496 F.3d 312, 315 (3d Cir. 2007).  Our Court of Appeals
ruled that the federal court in Philadelphia had specific
jurisdiction over the defendant.  Id.  It concluded that the
hotel had purposely availed itself of the privilege of conducting
activities with Pennsylvania because it mailed seasonal
newsletters to the plaintiffs' Pennsylvania home as well as a
brochure regarding its spa services and spoke to the plaintiffs
on the phone for the purpose of forming an agreement to render
spa services.  Id. at 318.  As in O'Connor, a brochure here was
mailed to the plaintiffs for marketing purposes, and a future
contract was negotiated by phone - and here also by email - with
Pennsylvania residents.  Moreover, as discussed above, at least
one of Mercer's emails to the plaintiffs specifically touted the
property's convenience to Pennsylvania residents, and
representatives of Mercer and GF Princeton personally visited the
plaintiffs' headquarters in Newtown, Pennsylvania as part of
their marketing efforts.  Accordingly, GF Princeton purposely
directed its activities at Pennsylvania.

        We must next address whether this litigation arises out
of or relates to at least one of these activities.  The
plaintiffs contend it does because they would not have entered
the leasing agreement but for the fact that Mercer initially sent
its real estate agent a brochure, and the purpose of GF
Princeton's meeting with the plaintiffs in Pennsylvania was to
discuss entering into the leasing agreement.  In addition, all

-11-

calls and emails between GF Princeton or Mercer and the
plaintiffs were regarding the leasing agreement.  In O'Connor,
our Court of Appeals found that the litigation arose out of the
hotel's contacts with Pennsylvania because "through its mailings
and phone calls to Pennsylvania, [the hotel] formed a contract
for spa services" and the plaintiffs' claims "directly and
closely" related to that contract.  Id.  Here, GF Princeton
similarly formed a contract with the plaintiffs through its
mailings to Pennsylvania, its emails and phone calls to
Pennsylvania, and its meeting in Pennsylvania.  Plaintiffs'
claims "directly and closely" relate to the leasing agreement.
Accordingly, the litigation arose out of GF Princeton's contacts
with Pennsylvania.

          Our final step in the specific jurisdiction analysis is
to determine whether the exercise of jurisdiction otherwise
comports with fair play and substantial justice.  D'Jamoos, 566
F.3d at 102-03.  "The existence of minimum contacts makes
jurisdiction presumptively constitutional, and the defendant must
present a compelling case that the presence of some other
considerations would render jurisdiction unreasonable."
O'Connor, 496 F.3d at 324 (internal quotations omitted).  Factors
to consider in this analysis are the burden on the defendant,
Pennsylvania's interest in adjudicating the dispute, the
plaintiff's interest in obtaining convenient and effective
relief, and the most efficient resolution of controversies.  Id.
GF Princeton concedes that the location of this litigation in

-12-

either Pennsylvania or New Jersey is unlikely to impose a significant burden on any party, and Pennsylvania and New Jersey both have an interest in seeing the rights of their citizens vindicated.  In addition, our exercise of jurisdiction would provide for a more efficient resolution of this controversy. Accordingly, it comports with fair play and substantial justice.

    For the above reasons, we conclude that the exercise of personal jurisdiction over the defendant is proper, and we will deny its motion to dismiss the complaint.